UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY WILLIAMS #373703,

    Plaintiff,                                          Hon. Robert J. Jonker

v.                                                        Case No. 1:23-cv-1038

LOGAN BLOUGH, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on Defendants' Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 20.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED IN PART AND DENIED IN PART**.

**I. Background**

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU), filed a complaint pursuant to 42 U.S.C. § 1983 on October 2, 2023, against Defendants Corrections Officer (CO) Logan Blough and Lt. Jacob Basye based on events that occurred at MTU in May 2023. (ECF No. 1.)

Plaintiff alleges that on May 26, 2023, non-Defendant Corrections Officer Lopez released Plaintiff from his cell to use the store machine. When Plaintiff returned to his cell, the window on the door was covered, indicating that his cellmate was using the toilet. Plaintiff waved his right hand to notify the officers at the desk that he could not go into the cell because his bunkie was on the toilet. At that point, CO Blough stated that he did not care if Plaintiff's cellmate was "playing

1

with his dick, take it the fuck in!" (*Id.* at PageID.3.) Plaintiff told CO Blough that he was going to write a PREA grievance on him, and CO Blough responded that Plaintiff could do that from segregation. CO Blough then handcuffed Plaintiff and escorted him to segregation, where Plaintiff received a false misconduct report for being out of his cell without authorization and for refusing to return to his cell. (*Id.*)

Lt. Basye reviewed Plaintiff on the misconduct the same day and upgraded it from a class 2 to a class 1 non-bondable misconduct, which kept Plaintiff in segregation. Lt. Basye refused to acknowledge Plaintiff's request for witnesses, evidence, or camera footage, and told Plaintiff, "You talk too much, that's why I had c/o Blough put you in segregation and I'm upgrading the misconduct report. Now you can write all the PREA's [sic] you want from here!" (*Id.*)

Plaintiff alleges that Lt. Basye attempted to deny Plaintiff due process when marking that Plaintiff did not want a hearings investigator or relevant documents. He further alleges that Lt. Basye also intimidated the other correctional officers so that none of them would give a statement on Plaintiff's behalf. Plaintiff personally contacted the hearings investigator, submitted letters to the warden, and filed a grievance regarding the matter. Plaintiff attaches a copy of the grievances to his complaint, as well as the letters he wrote to the warden, in which he states that after CO Blough placed him in handcuffs and took his ID, he said "Look how old your number is, I know you've seen a few cocks in your day." (*Id.* at PageID.10.) Plaintiff asked CO Lopez to be a witness because he gave Plaintiff authorization to be out of his cell, but he refused because he did not want to cross Defendants. (*Id.*) Plaintiff states that witnesses to the matter provided affidavits, which Plaintiff attaches to his complaint. Plaintiff was held in segregation for five days, but the misconduct was later dismissed because of the due process violations described above.

Plaintiff brings First Amendment retaliation claims against Defendants based on Plaintiff's threat to write a PREA grievance against CO Blough. Defendants now seek summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies against them.

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary

3

judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five

4

business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants submit a Step III Grievance Report dated January 16, 2024, which shows the grievances arising out of MTU that Plaintiff filed within two weeks of May 26, 2023, and exhausted through Step III. (ECF No. 21-3.) The Step III Report shows that Plaintiff filed two grievances pertaining to his claims in this case: (1) MTU-23-05-0376-17C (0376 Grievance; and (2) MTU-23-05-0371-27A (0371 Grievance). The 0376 Grievance pertains to Defendant Blough's conduct on May 26, 2023. (*Id.* at PageID.121) The 0371 Grievance pertains to Defendant Basye's conduct on May 26, 2023. (*Id.* at PageID.125.)

    **A.**    **Defendant Blough**

Plaintiff filed the 0376 Grievance on May 28, 2023, complaining about the incident outside his cell involving Defendant Blough. After reciting the facts up to the point Blough said, "[L]ook at how old your number is. I know you seen a few cocks in your time locked up," Plaintiff stated,

> At no point in time should a c/o force a person into the cell while another has penis or buttocks exposed, nor should he or she be talking about cocks to a prisoner. The PREA Act prevents prisoner from this kinda behavior from all staff. Blough has a history of this kinda behavior.

5

(*Id.* at PageID.121.) The grievance was denied at Step I, and the denial was upheld at Steps II and III. (*Id.* at PageID.118–20, 122.)

As an initial matter, it is appropriate to identify the retaliatory acts Plaintiff alleges against Defendant Blough. While the complaint is not entirely clear on the matter, Plaintiff clarifies in his response that Blough's retaliatory acts included placing him in segregation and issuing a fabricated misconduct ticket. (ECF No. 1 at PageID.3–4; ECF No. 30 at PageID.151.) In their motion, Defendants address exhaustion only as it pertains to the misconduct ticket. Defendants' failure to address exhaustion of the alleged retaliatory placement in segregation precludes summary judgment on that claim.

As for the retaliatory misconduct ticket claim, Defendants argued that while Plaintiff normally would have been required to exhaust it by raising retaliation in the misconduct hearing, in this case he was required to exhaust his claim through the normal three-step grievance process because the misconduct ticket was dismissed during the hearing. (ECF No. 21 at PageID.97–100.) As support for this argument, Defendants cited *Parker v. Turner*, No. 20-12794, 2022 WL 722192 (E.D. Mich. Mar. 9, 2022), which concluded that, because the dismissal of the misconduct ticket "prior to the hearing foreclosed [the plaintiff's] opportunity to raise his allegations of retaliation in a misconduct hearing, on appeal or rehearing," he was required to file a grievance through the ordinary three-step process. *Id.* at *4. *Parker*, in turn, cited *Ali v. Simmons*, No. 1:19-cv-126, 2020 WL 6597562, at *5 (W.D. Mich. May 5, 2020), *report and recommendation adopted in part*, 2020 WL 5626921 (W.D. Mich. Sept. 21, 2020), which similarly held that although the misconduct ticket was dismissed without a hearing, the plaintiff could have exhausted his claim that the misconduct was retaliatory by filing a grievance. Based on these cases, Defendants argue that

Plaintiff failed to exhaust his claim against Defendant Blough because he did not raise retaliation in the 0376 Grievance. (*Id.* at PageID.100.)

Defendants' reliance on *Parker* and *Ali* is misplaced because here Plaintiff was afforded a hearing. *See Martin v. Halstead*, No. 1:21-cv-465, 2022 WL 18776267, at *3–4 (W.D. Mich. Sept. 6, 2022), *report and recommendation adopted*, 2023 WL 2042180 (W.D. Mich. Feb. 16, 2023) (rejecting the MDOC defendant's reliance on *Parker* and *Ali* as "irrelevant" because "in this case Plaintiff was afforded a hearing on the misconduct charge"). Moreover, as in *Martin*, Plaintiff has presented evidence by affidavit that he asserted at the hearing that Blough had written the misconduct in retaliation for Plaintiff's threat to file a PREA grievance on him. (ECF No. 3-2.) Although Defendants point to documents in the misconduct hearing packet attached to their reply showing that Plaintiff did not raise retaliation during the misconduct hearing or in the statement he provided for the hearing (ECF No. 33 at PageID.197 (citing ECF No. 33-1 at PageID.202, 204)), they ignore Plaintiff's affidavit, which creates a genuine issue of material fact that precludes summary judgment on the retaliatory misconduct claim.

**B.    Defendant Basye**

Plaintiff filed the 0371 Grievance on May 28, 2023, in which he asserted that while Defendant Basye was reviewing Plaintiff on the misconduct that Blough had written, Plaintiff asked Basye for camera footage at the time of the incident and witnesses, one of whom was CO Lopez. (ECF No. 21-3 at PageID.125.) Plaintiff alleged that Bayse "intentionally and falsely" checked the "no" boxes for the hearing investigator and witnesses so that Plaintiff would not have a proper defense. (*Id.*) The grievance was rejected on the basis that Plaintiff was grieving a misconduct that needed to go through the misconduct appeal process. Plaintiff filed a Step II appeal on the ground that he was not grieving a misconduct ticket, but instead was asserting that Bayse

7

violated his right to procedural due process. The Step II respondent upheld the Step I rejection. (*Id.* at PageID.124.) The Step III respondent likewise upheld the rejection. (PageID.123.)

Plaintiff alleges that Defendant Bayse retaliated against him by elevating Defendant Blough's fabricated misconduct to a class I ticket and by denying him a hearings investigator, witnesses, video footage, and relevant documents. (ECF No. 1 at PageID.3–4; ECF No. 30 at PageID.151.) Defendants argued that the 0371 Grievance could not exhaust Plaintiff's claims against Bayse because Plaintiff did not mention retaliation in the grievance and the grievance was written on May 28 and rejected on June 2, 2023—before the June 5, 2023 hearing—so it could not have exhausted Plaintiff's claims in accordance with *Parker* and *Ali*. (ECF No. 21 at PageID.100.)

As set forth above, the issue here is whether Plaintiff raised the issue of retaliation during the misconduct hearing.[1] Plaintiff's affidavit indicates that he raised the issue of retaliation with the administrative law judge by asserting that Defendant Basye upgraded the misconduct due to retaliation. (ECF No. 30-2.) Thus, an issue of fact remains as to whether Plaintiff exhausted this aspect of his claim against Defendant Basye. However, Plaintiff does not indicate in his affidavit that he asserted Basye's alleged procedural due process violations were retaliatory. Accordingly, on this aspect of Plaintiff's claims, Defendants have shown—and Plaintiff has failed to refute— that Plaintiff failed to exhaust his available administrative remedies.

### IV. Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendants' motion for summary judgment (ECF No. 20) with regard to Plaintiff's claim that Defendant Basye retaliated against him by denying him procedural due process in connection with the misconduct hearing but

---

[1] The 0371 Grievance was properly rejected as it grieved an "issue[] directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing) . . . ." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ J.9.

deny the motion as to the claims against Defendant Blough and Plaintiff's claim that Defendant Bayse retaliated by upgrading the misconduct to a class I violation.

I further recommend that the Court order that Defendants may move for a bench trial on their exhaustion defense to the remaining claims in accordance with *Lee v. Willey*, 789 F.3d 673 (6th Cir. 2015), and that failure to do so within the time set by the Court will waive the defense.

Dated: December 17, 2024                                    /s/ Sally J. Berens
                                                            SALLY J. BERENS
                                                            U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).